David Berten (IL Bar # 6200898; Member of NDCA bar)
dberten@giplg.com
C. Graham Gerst (IL Bar #6255988) (*Pro Hac Vice* application forthcoming)
ggerst@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

*Attorneys for Range Energy Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RANGE ENERGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HYLIION INC. <br><br> Defendant. | Case No. 5:26-cv-2311 <br><br> **COMPLAINT FOR DECLARATORY JUDGEMENT OF NON-INFRINGEMENT AND INVALIDITY** |

Plaintiff Range Energy Inc. ("Range Energy" or "Plaintiff") seeks a declaratory judgment that Range Energy does not infringe claims of U.S. Patent Nos. 9,694,712 (the "'712 Patent"), 9,802,508 (the "'508 Patent"), 10,245,972 (the "'972 Patent"), 10,384,560 (the "'560 Patent"), 10,654,369 (the "'369 Patent"), 10,821,853 (the "'853 Patent"), 10,967,742 (the "'742 Patent"), and 12,024,029 (the "'029 Patent") (collectively "the Patents-in-Suit") that Defendant Hyliion Inc. ("Hyliion" or "Defendant") has asserted against Range Energy, as well as any other claims Hyliion later asserts.  Range Energy also seeks a declaratory judgment that the claims of the Patents-in-Suit Hyliion has asserted against Range Energy, as well as any other claims Hyliion later asserts, are invalid.

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code.  Range Energy seeks a declaratory judgment that it does not infringe claims that Hyliion has asserted from the Patents-in-Suit, 9,694,712; 9,802,508; 10,245,972; 10,384,560; 10,654,369; 10,821,853; 10,967,742; and 12,024,029, as detailed below, as well as any additional patents Hyliion may raise during the course of this case.  Range Energy separately seeks a declaratory judgment that claims that Hyliion has asserted from the Patents-in-Suit, as well as any that Hyliion raises during the course of this case, are invalid.

## THE PARTIES

2. Plaintiff Range Energy Inc. is a corporation organized in the State of Delaware, with its principal place of business at 1060 La Avenida Street, Mountain View, California, 94043.  Range Energy is registered to do business in California.  It is an early-stage technology company developing the "eTrailer System," electrically-powered trailer component kits to upfit existing trailers for the trucking industry.  The system that Range Energy is developing will improve fuel efficiency and vehicle safety and reduce this industry's environmental impact.

3. On information and belief, Defendant Hyliion Inc. is a corporation organized in the State

COMPLAINT                                         1                        CASE NO.  5:26-CV-2311

of Delaware with its principal place of business at 1202 BMC Drive, Suite 100, Cedar Park, Texas, 78613.  Hyliion does not currently sell any electric-trailer products, but it owns a group of patents related to electric trailers that it is asserting against Range Energy.

## JURISDICTION AND VENUE

4.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and under the patent laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

6.      This Court has personal jurisdiction over Hyliion Inc.  Hyliion is registered to do business in California.  On information and belief, Defendant maintains a California registered agent, Corporation CSC at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

7.      As detailed below, Hyliion has intentionally and repeatedly directed enforcement conduct relating to the Patents-in-Suit, and a large number of business and licensing communications, to Range Energy in Mountain View, California, which is located in this District.

8.      Hyliion has availed itself of the California market.  Its website touts that its KARNO energy generator is "an eligible technology under California's RPS" program.  That page quotes Hyliion's CEO and founder, Thomas Healy, stating that "'California is leading the way in green initiatives, and we are excited to support their energy goals through our cutting edge-technology, helping to create a more sustainable and resilient energy future.'"  (https://investors.hyliion.com/news/news-details/2024/Hyliions-KARNO-Linear-Generator-Now-Qualifies-Under-Californias-Renewables-Portfolio-Standard-RPS/default.aspx)

9.      Hyliion has also attended multiple trade shows in the state.  It presented at the Annual Gateway Conference in San Francisco in September 2025. https://investors.hyliion.com/news/news-details/2025/Hyliion-Holdings-to-Present-at-the-2025-Gateway-Conference-on-September-3-

2025/default.aspx

10.    Hyliion also was an exhibitor at the Advanced Clean Transportation (ACT) Expo at the Anaheim Convention Center in Anaheim, CA on April 28-May 1, 2025.  Hyliion also was an exhibitor at the 2023 ACT conference in the same location.

11.    Hyliion maintains a website accessible in California (https://www.hyliion.com) to advertise and market its products.

12.    Hyliion's activities in California are sufficient to provide both specific and general jurisdiction in this state, comporting with due process.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Range Energy's declaratory judgment claims occurred in this district, including Hyliion's assertion of the Patents-in-Suit against Range Energy.

## DIVISIONAL ASSIGNMENT

14.    As described in additional detail below, a substantial part of the events giving rise to these claims occurred in Santa Clara County, which is where Range Energy is located.  Range Energy developed the product Hyliion is accusing of infringement there, and Hyliion directed its enforcement conduct at Range Energy there.  Accordingly, assignment of this case to the San Jose Division under Local Rule 3-2(c) and 3-5(b) is appropriate.

## BACKGROUND FACTS

15.    On August 15, 2025, Brett Pinkus, a lawyer then at a firm called Wick Phillips, sent a letter on Hyliion's behalf to Range Energy's General Counsel, Joonsik Maing, at Range Energy's Mountain View, California headquarters.  Mr. Pinkus referred to Hyllion's "extensive portfolio of patents" and alleged that Range Energy's "eTrailer System practices one or more of Hyliion's patents" and required a license.  Mr. Pinkus included 29 pages of claim charts purporting to establish infringement of claim 16 of Hyliion's '853 patent and claim 1 of Hyliion's '029 patent.  Mr. Pinkus

explained that Hyllion was offering a license to those patents that included both a substantial up-front component and a running royalty.  The letter gave Range Energy 21 days to respond to Hyliion's offer.

16.    Outside counsel for Range Energy based in San Francisco, California responded just five days later, on August 20, 2025, pointing out a variety of problems with Hyliion's infringement allegations and with the patent claims rendering them invalid.  The letter explained that Range Energy was "open to a business solution that avoids litigation for both parties, but Range will only do so on terms that make commercial sense."  That letter made a counteroffer on behalf of Range Energy structured in a different manner and at a lower price level.

17.    When Hyliion's lawyer next wrote to Range Energy's outside counsel in San Francisco, California on November 14, 2025, he was employed at a different firm, Spencer Fane.  He disputed the points in Range Energy's August letter and demanded a "call between the parties' executive teams within the two weeks following Thanksgiving to discuss a path forward."  He continued to pressure Range Energy, stating that "[g]iven the ongoing nature of Range's infringing activities and the need for clarity heading into the new year, it is imperative that the parties reach a resolution before year-end."

18.    On November 17, 2025, Hyliion's Head of Business Development, Govi Ramasamy, emailed Range Energy's VP of Supply Chain and Partnerships, Brandon Harris, in Mountain View, California, three separate times demanding a meeting which ultimately was scheduled for December 16, 2025.

19.    On December 10, 2025, Hyliion's Mr. Ramasamy sent Range Energy's Mr. Harris in Mountain View, California another license offer.  This offer left the up-front payment unchanged and modified the running royalty from what Hyliion originally previously demanded on August 15.  Hyliion's letter also noted that it was willing to sell its patents to Range Energy as an alternative.

20.    On December 16, 2025, Hyliion's Range Energy's Mr. Maing, and Mr. Harris,

COMPLAINT                                    4                              CASE NO.  5:26-CV-2311

participated in the scheduled videoconference from their California offices that Hyliion had demanded with Hyliion's Mr. Ramasamy and Mr. Jose Oxholm, Hyliion's in-house counsel.  On that call, Mr. Ramasamy and Mr. Oxholm stated that they wanted to get a resolution early in the New Year.

21.     On December 19, 2025, Mr. Ramasamy wrote Mr. Harris and Mr. Maing in Mountain View, California demanding that Mr. Harris provide him with diligence questions and a meeting on December 22, 2025.

22.     On December 22, 2025, Hyliion's Mr. Ramasamy corresponded multiple times with Range Energy's Mr. Harris and Mr. Maing in Mountain View, California to reschedule the meeting scheduled for that day to January 7, 2026.

23.     On January 6, 2026, Hyliion's Mr. Ramasamy sent message to Mr. Harris and Mr. Maing in Mountain View, California asking for an update in advance of the scheduled January 7, 2026 meeting.

24.     On January 7, 2026, Mr. Harris and Mr. Maing participated in the scheduled videoconference with Hyliion from their California offices to discuss Hyliion's patent assertion.

25.     On January 28, 2026, Range Energy's Mr. Maing in California, along with Range Energy outside counsel, participated in a call that with Hyliion's Mr. Ramasamy and Mr. Oxholm to determine whether resolution was possible.  On that call, Range Energy's outside counsel raised questions about ambiguities concerning the claimed inventorship apparent from the file history for the '853 patent. Hyliion had submitted a sworn statement to the US PTO that one of the inventors, Eric Schmidt, had refused to execute the required oath or declaration that he was, indeed, an inventor of that patent's claims.  Hyliion's participants did not have a substantive response to these issues.

26.     Despite the cloud over inventorship, Hyliion continued to threaten Range Energy.  On February 5, 2026, Hyliion's Mr. Ramasamy wrote Range Energy's Mr. Maing in Mountain View, California demanding a videoconference, but also warning that "it's clear we are now nearing an

COMPLAINT                                         5                                  CASE NO.  5:26-CV-2311

impasse due to a lack of meaningful action from Range Energy…. "We need a clear position from Range Energy on the path forward. If we do not receive a substantive response, Hyliion will take steps to move forward in a manner that best protects its interests…. This is not a hypothetical exercise, we are serious, and we expect it to be treated accordingly."

27.     On Monday, February 9, Range Energy's Mr. Maing participated in a videoconference from his California office with Hyliion's Mr. Govi and Mr. Oxholm.  Mr. Oxholm expressed a lack of concern about inventorship.  He stated that Hyliion had made that submission on the inventor's behalf simply because the inventor had been "unreachable," even though Hyliion's sworn PTO submission contradicted that assertion.  The form Hyliion had submitted to the PTO at the time had, in fact, selected that the inventor had refused to sign the oath or affirmation rather than the available option that the inventor "could not be reached."  Hyliion then closed the call by stating that they were going to decide that week whether to file a lawsuit, and that, if Range Energy wanted to avoid litigation, it needed to respond to Hyliion's patent license offer before the end of the week.

28.     Range Energy's outside counsel wrote Hyliion's counsel on February 13, 2026.  This new letter added detail to the August 20, 2025 letter's discussion of problems with Hyliion's infringement allegations and added new such problems and new issues with the asserted claims' validity.   The letter also explained that Range Energy was thinly capitalized and had, to-date, generated no revenues.

29.     Range Energy's Mr. Harris did respond from his Mountain View, California office with a license counteroffer on Monday, February 16, 2026 that was materially lower than what Hyliion had proposed.

30.     On February 18, 2026, Mr. Ramasamy wrote Range Energy's Mr. Maing in his California office setting a videoconference for February 20, 2026.

COMPLAINT                                             6                                    CASE NO.  5:26-CV-2311

31.     Hyliion's outside counsel, Mr. Pinkus, finally made himself available on Friday, February 20, 2026 to discuss the inventorship issue with Range Energy's outside counsel.  On that call, he asserted that the sworn PTO submission had been made in error and offered to provide supporting documentation for that assertion.

32.     On that same day, February 20, 2026, Range Energy's Mr. Maing and Mr. Harris, participated in the videoconference from their California offices that Hyliion had demanded.  On that call, Hyliion asserted that the problems detailed in Range Energy's February 13 letter were "overly technical," that the trier of fact in litigation would rule on their side, and that they were ready to file a complaint.  Hyliion made a new offer on that call, and Range Energy sent a new counteroffer from Mountain View, California on that same day, somewhat higher than its last.

33.     On Friday, February 27, Hyliion's Mr. Ramasamy sent a draft license agreement with new terms slightly modified from what the company had previously offered to Range Energy's Mr. Harris in his Mountain View, California office.

34.     Range Energy's Mr. Harris responded to Mr. Ramasamy on March 3, 2026 from his Mountain View, California office, explaining that Range Energy was not prepared to sign any license agreement because it still did not have responses to the substantive points its counsel had raised about alleged infringement and invalidity back on February 13.  Hyliion's counsel, Mr. Pinkus, had not responded to those issues, and it is not clear whether he ever would have without Range Energy's prompting.

35.     Mr. Pinkus finally did so in a letter to Range Energy's outside counsel on March 10, 2026, disputing the infringement and validity issues facing the Hyliion patents.  His letter amplified Hyliion's threat, asserting infringement of thirteen claims spread across six additional Hyliion patents, the '712, '508, '972, '560, '369, and '742 patents.  His letter also noted that, even if Range Energy had

generated no revenues, Range Energy's own demonstration of its technology in videos on Range Energy's website constituted infringement. Those demonstrations had taken place in Sacramento, California. Mr. Pinkus then stated that Hyliion's last offer "remain[ed] firm" and that Hyliion would not engage in further "exchange of letters on the substantive merits." He concluded the letter by stating that "[i]f Range wishes to continue to debate the infringement issue, that will need to occur in litigation."

36. On March 6, 2026, Mr. Harris participated in a videoconference Mr. Ramasamy and Mr. Oxholm had demanded from his Mountain View, California office. Mr. Ramasamy and Mr. Oxholm told him that they needed to have a final decision by next Friday, March 13, or they would be forced to do what they need to do to enforce their patents.

37. Range Energy's outside counsel responded on March 13, 2026 to Mr. Pinkus's March 10 letter, pointing to flaws in its reasoning. Range Energy's outside counsel also included claim charts demonstrating anticipation of both of Hyliion's two originally-asserted patent claims by multiple pieces of prior art and explaining that those same prior art references also anticipated Hyliion's thirteen new asserted claims.

38. On a videoconference with Hyliion on that same day, March 13, 2026 that Hyliion had demanded, Range Energy's Mr. Harris made a new settlement offer from his Mountain View, California office to Hyliion below Hyliion's last proposal. Mr. Ramasamy responded with a message he sent to Mr. Harris at Mr. Harris's Mountain View, California office that Hyliion was "done with back-and-forth negotiations," would not respond to Range Energy's offer, and would be doing what they thought was "best for Hyliion."

39. In total, Hyliion personnel or its agent, Mr. Pinkus, sent twenty communications to Range Energy personnel or their agents in California and participated in seven videoconferences/calls with Range Energy personnel in California related to Hyliion's allegation of patent infringement.

## COUNT 1: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 9,694,712

40.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

41.    Hyliion has alleged and continues to allege that Range Energy infringes claim 8 of the '712 patent.  Claim 8 of the '712 patent recites:

| Preamble | A method comprising: |
| --- | --- |
| Element A | replacing an existing suspension assembly of a trailer with a hybridizing suspension assembly, wherein the hybridizing suspension assembly includes a frame, suspension, one or more drive axles, and at least one electric motor-generator coupled to at least one of the one or more drive axles to provide, in a first mode of operation, an assistive motive force and, in a second mode of operation, a regenerative braking force, the hybridizing suspension assembly configured with wheels and tires to allow the trailer to roll along a roadway when motivated by a fuel consuming engine of a tractor to which the trailer is mechanically coupled in a tractor-trailer vehicle configuration. |

42.    Range Energy has not infringed and does not infringe claim 8 of the '712 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

43.    As the first of a set of a non-limiting examples, Range Energy does not replace existing suspension assemblies with hybridizing suspension assemblies for customers.  In the event that a customer were to employ a Range Energy eTrailer System, that customer would install that system, not Range Energy.  Nor does Range Energy direct or advise customers to replace existing suspension assemblies.  Again, in the event that a customer were to employ a Range Energy eTrailer System, Range Energy would provide instructions on the installation of its system, not on the removal of any "existing suspension assembly."

44.    Nor does Range Energy provide suspension assemblies that include an electric motor-generator coupled to at least one or more drive axles.  Range Energy's eTrailer System's electric power

COMPLAINT                                          9                                    CASE NO.  5:26-CV-2311

system is an integral part of the drive axle, not coupled to the drive axle.

45.     Nor do Range Energy's eTrailer Systems' electric power systems operate in first and second modes of operation, one providing assistive motive force, the other providing a regenerative braking force.  First, Range Energy's eTrailer System's electric power systems remain in the same mode during all operations.  Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

46.     Nor does Range Energy provide suspension assemblies.  It provides kits that do not include suspension equipment.

## COUNT 2: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 9,802,508

47.     Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

48.     Hyliion has alleged and continues to allege that Range Energy infringes claims 1 and 10 of the '508 patent.  Claim 1 of the '508 patent recites:

| | |
|---|---|
| Preamble | An apparatus for use in a tractor-trailer vehicle configuration as a hybridizing suspension assembly, the apparatus comprising: |
| Element A | a suspension assembly including a frame, suspension, and one or more drive axles, the suspension assembly suitable for attachment beneath a trailer of the tractor-trailer vehicle; |
| Element B | the suspension assembly including at least one electric motor-generator coupled to at least one of the one or more drive axles to provide, in a first mode of operation, a motive rotational force and to provide, in a second mode of operation, a regenerative braking force; |
| Element C | a battery array from which stored energy is supplied to power the motor-generator in the first mode of operation and to which regenerated braking energy is supplied in the second mode of operation, the battery array further configured to receive regenerated suspension energy; and |
| Element D | a controller operatively coupled between the motor-generator and one or more sensor inputs to transition between the first, the second and at least a third mode of operation, during motion of the tractor-trailer vehicle over the roadway, using the one or more sensor inputs. |

COMPLAINT                                              10                                    CASE NO.  5:26-CV-2311

49.    Claim 10 of the '508 patent recites:

| Preamble | A method comprising: |
|---|---|
| Element A | replacing an existing suspension assembly of a trailer with a hybridizing suspension assembly, wherein the hybridizing suspension assembly includes a frame, suspension, one or more drive axles, and at least one electric motor-generator coupled to at least one of the one or more drive axles to provide, in a first mode of operation, an assistive motive force and, in a second mode of operation, a regenerative braking force, the hybridizing suspension assembly configurable with wheels and tires to allow the trailer to roll along a roadway when motivated by a fuel consuming engine of a tractor to which the trailer is mechanically coupled in a tractor-trailer vehicle configuration; |
| Element B | coupling a controller to the at least one electric motor generator; and |
| Element C | coupling a battery array to store energy regenerated by either or both of the at least one electric motor-generator and one or more shocks of the suspension. |

50.    Range Energy has not infringed and does not infringe claims 1 or 10 of the '508 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

51.    As the first of a set of a non-limiting examples with regard to claim 1 of the '508 patent, Range Energy does not provide suspension assemblies that include an electric motor-generator coupled to at least one or more drive axles.  Range Energy's eTrailer System's electric power system is an integral part of the drive axle, not coupled to the drive axle.

52.    Nor do Range Energy's eTrailer Systems' electric power systems operate in first, second, and third modes of operation, where one provides motive rotational force, a second provides a regenerative braking force, and a third mode.  First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.  Second, Range Energy's eTrailer Systems' electric power systems receive rather than provide force.

53.    Nor do Range Energy's eTrailer Systems receive regenerated suspension energy.  The only type of regenerated energy they receive is from regenerative braking.

COMPLAINT                                             11                                    CASE NO.  5:26-CV-2311

54.     Nor do Range Energy's eTrailer Systems include controllers to transition between modes of operation.  The phrase "the controller … to transition" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller … to transition" as used in the claim.

55.     Nor does Range Energy provide suspension assemblies.  It provides kits that do not include suspension equipment.

56.     As the first of a set of a non-limiting examples with regard to claim 10 of the '508 patent, Range Energy does not replace existing suspension assemblies with hybridizing suspension assemblies for customers.  In the event that a customer were to employ a Range Energy eTrailer System, that customer would install that system, not Range Energy.  Nor does Range Energy direct or advise customers to replace existing suspension assemblies.  Again, in the event that a customer were to employ a Range Energy eTrailer System, Range Energy would provide instructions on the installation of its system, not on the removal of any "existing suspension assembly."

57.     Range Energy does not provide suspension assemblies that include an electric motor-generator coupled to at least one or more drive axles.  Range Energy's eTrailer System's electric power system is an integral part of the drive axle, not coupled to the drive axle.

58.     Nor do Range Energy's eTrailer Systems' electric power systems operate in first and second modes of operation, where one provides assistive motive force, a second provides a regenerative braking force.  First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.  Second, Range Energy's eTrailer Systems' electric power systems receive rather than provide force.

59.     Nor do Range Energy's eTrailer Systems receive energy regenerated by one or more shocks of the suspension.  The only type of regenerated energy they receive is from regenerative

COMPLAINT                                                    12                                            CASE NO.  5:26-CV-2311

braking.

60.    Nor do Range Energy's eTrailer Systems include controllers.  The term "controller" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller" as used in the claim.

61.    Nor does Range Energy provide suspension assemblies.  It provides kits that do not include suspension equipment.

## COUNT 3: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 10,245,972

62.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

63.    Hyliion has alleged and continues to allege that Range Energy infringes claims 1, 4, 7, and 10 of the '972 patent.  Claim 1 of the '972 patent recites:

| Preamble | An apparatus comprising: |
|---|---|
| Element A | a towed vehicle for use in combination with a towing vehicle, the towed vehicle having an electrically powered drive axle configured to supply supplemental torque to one or more wheels of the towed vehicle and to thereby supplement, while the towed vehicle travels over a roadway and in at least some modes of operation, primary motive forces applied through a separate drivetrain of the towing vehicle; |
| Element B | an energy store on the towed vehicle, the energy store configured to supply the electrically powered drive axle with electrical power and further configured to receive energy recovered using the electrically powered drive axle in a regenerative braking mode of operation, and wherein the energy store on the towed vehicle includes a battery or battery array; |
| Element C | an auxiliary power unit (APU) interface to supply electrical power from the energy store to the towing vehicle; and |
| Element D | an inverter coupled between the battery or battery array and the APU interface to supply AC power to the towing vehicle. |

64.    Claim 4 of the '972 patent recites:

| Preamble | An apparatus comprising: |
|---|---|

COMPLAINT

13

CASE NO.  5:26-CV-2311

| Element A | a towed vehicle for use in combination with a towing vehicle, the towed vehicle having an electrically powered drive axle configured to supply supplemental torque to one or more wheels of the towed vehicle and to thereby supplement, while the towed vehicle travels over a roadway and in at least some modes of operation, primary motive forces applied through a separate drivetrain of the towing vehicle; |
|---|---|
| Element B | an energy store on the towed vehicle, the energy store configured to supply the electrically powered drive axle with electrical power and further configured to receive energy recovered using the electrically powered drive axle in a regenerative braking mode of operation, and wherein the energy store on the towed vehicle includes a battery or battery array; |
| Element C | an auxiliary power unit (APU) interface to supply electrical power from the energy store to the towing vehicle; and |
| Element D | an electrical cable for transferring electrical power from the energy store on the towed vehicle to the towing vehicle and for bidirectionally conveying data between the towing vehicle and at least a battery management system of the towed vehicle. |

65.     Claim 7 of the '972 patent recites:

| Preamble | A method comprising: |
|---|---|
| Element A | supplying supplemental torque to one or more wheels of a towed vehicle using an electrically powered drive axle on the towed vehicle to supplement, while the towed vehicle travels over a roadway and in at least some modes of operation, primary motive forces applied through a separate drivetrain of a towing vehicle; |
| Element B | supplying the electrically powered drive axle with electrical power from an energy store on the towed vehicle, the energy store configured to receive and store energy recovered using the electrically powered drive axle in a regenerative braking mode of operation, and wherein the energy store on the towed vehicle includes a battery or battery array; |
| Element C | supplying electrical power to the towing vehicle from the energy store on the towed vehicle by way of an auxiliary power unit (APU) interface; and |
| Element D | using an inverter coupled between the battery or battery array and the APU interface to supply AC power to the towing vehicle. |

66.     Claim 10 of the '972 patent recites:

| Preamble | A method comprising: |
|---|---|
| Element A | supplying supplemental torque to one or more wheels of a towed vehicle using an electrically powered drive axle on the towed vehicle to supplement, while the towed vehicle travels over a roadway and in at least |

| | |
|---|---|
| | some modes of operation, primary motive forces applied through a separate drivetrain of a towing vehicle; |
| Element B | supplying the electrically powered drive axle with electrical power from an energy store on the towed vehicle, the energy store configured to receive and store energy recovered using the electrically powered drive axle in a regenerative braking mode of operation, and wherein the energy store on the towed vehicle includes a battery or battery array; |
| Element C | supplying electrical power to the towing vehicle from the energy store on the towed vehicle by way of an auxiliary power unit (APU) interface; |
| Element D | transferring electrical power from the energy store on the towed vehicle to the towing vehicle via an electrical cable; and |
| Element E | bidirectionally conveying data between the towing vehicle and at least a battery management system of the towed vehicle via the electrical cable. |

67.     Range Energy has not infringed and does not infringe claims 1, 4, 7 or 10 of the '972 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

68.     As the first of a set of a non-limiting examples with regard to claim 1 of the '972 patent, Range Energy does not provide towed vehicles.  Range Energy does not provide vehicles, just eTrailer Systems kits, let alone vehicles attached to a vehicle that tows those vehicles.

69.     Nor do Range Energy's eTrailer Systems' electric power systems operate in different modes of operation, where one provides primary motive forces and another a regenerative braking mode. Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.

70.     Nor do Range Energy's eTrailer Systems have an auxiliary power unit interface to supply electric power to a towing vehicle or an inverter to supply AC power to a towing vehicle.  Range Energy eTrailer Systems use all battery power themselves and do not provide any to the towing vehicle.

71.     As the first of a set of a non-limiting examples with regard to claim 4 of the '972 patent, Range Energy does not provide towed vehicles.  Range Energy does not provide vehicles, just eTrailer

COMPLAINT                                15                          CASE NO.  5:26-CV-2311

Systems kits, let alone vehicles attached to a vehicle that tows those vehicles.

72.     Nor do Range Energy's eTrailer Systems' electric power systems operate in different modes of operation, where one provides primary motive forces and another a regenerative braking mode. Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.

73.     Nor do Range Energy's eTrailer Systems have an auxiliary power unit interface to supply electric power to a towing vehicle or an electrical cable for transferring power to a towing vehicle. Range Energy eTrailer Systems use all battery power themselves and do not provide any to the towing vehicle.

74.     As the first of a set of a non-limiting examples with regard to claim 7 of the '972 patent, Range Energy's eTrailer Systems' electric power systems do not operate in different modes of operation, where one provides primary motive forces and another a regenerative braking mode. Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.

75.     Nor do Range Energy's eTrailer Systems have an auxiliary power unit interface to supply electric power to a towing vehicle or an inverter to supply AC power to a towing vehicle.  Range Energy eTrailer Systems use all battery power themselves and do not provide any to the towing vehicle.

76.     As the first of a set of a non-limiting examples with regard to claim 10 of the '972 patent, Range Energy does not provide towed vehicles.  Range Energy does not provide vehicles, just eTrailer Systems kits, let alone vehicles attached to a vehicle that tows those vehicles.

77.     Nor do Range Energy's eTrailer Systems' electric power systems operate in different modes of operation, where one provides primary motive forces and another a regenerative braking mode. Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.

COMPLAINT                                    16                          CASE NO.  5:26-CV-2311

78.     Nor do Range Energy's eTrailer Systems have an auxiliary power unit interface to supply electric power to a towing vehicle or an electrical cable for transferring power to a towing vehicle. Range Energy eTrailer Systems use all battery power themselves and do not provide any to the towing vehicle.

**COUNT 4: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 10,384,560**

79.     Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

80.     Hyliion has alleged and continues to allege that Range Energy infringes claims 1, 11, and 18 of the '560 patent.  Claim 1 of the '560 patent recites:

| Preamble | An apparatus for use in a vehicle including a fuel-fed engine configured to supply primary motive forces to the vehicle, the apparatus comprising: |
|---|---|
| Element A | a suspension assembly including a frame, a suspension, one or more drive axles, and one or more wheels coupled to respective ones of the one or more drive axles; |
| Element B | a first wheel of the one or more wheels including at least a first electric motor-generator coupled to provide, in a first mode of operation, a motive rotational force at the first wheel to supplement the primary motive forces, and to provide, in a second mode of operation, a regenerative braking force; |
| Element C | an energy store from which energy is supplied to power the first electric motor-generator in the first mode of operation and to which energy is supplied by regenerative braking in the second mode of operation; and |
| Element D | a controller operatively coupled between the first electric motor-generator and a sensor input to transition the first electric motor-generator between the first, the second and at least a third mode of operation, during motion of the tractor-trailer vehicle over a roadway, using the sensor input; |
| Element E | wherein, based on the sensor input, the controller transitions the first electric motor-generator between the first, the second, and the third mode of operation. |

81.     Claim 11 of the '560 patent recites:

| Preamble | A method comprising: |
|---|---|
| Element A | replacing an existing suspension assembly of a trailer with a hybridizing |

COMPLAINT

17

CASE NO.  5:26-CV-2311

| | suspension assembly, wherein the hybridizing suspension assembly includes a frame, a suspension, one or more drive axles, and one or more wheels coupled to respective ones of the one or more drive axles, a first wheel of the one or more wheels including at least a first electric motor-generator coupled to provide, in a first mode of operation, an assistive motive force at the first wheel and, in a second mode of operation, a regenerative braking force, the one or more wheels configurable with tires to allow the trailer to roll along a roadway when motivated by a fuel consuming engine of a tractor to which the trailer is mechanically coupled in a tractor-trailer vehicle configuration; |
|---|---|
| Element B | coupling a controller between the first electric motor-generator and one or more sensor inputs to transition the first electric motor-generator between the first, the second, and at least a third mode of operation, during motion of the tractor-trailer vehicle over the roadway, using the one or more sensor inputs; and |
| Element C | transitioning, based on a first sensor input and by the controller, the first electric motor-generator between the first, the second, and the third mode of operation. |

82.    Claim 18 of the '560 patent recites:

| Preamble | An apparatus for use in a vehicle including a fuel-fed engine configured to supply primary motive forces to the vehicle, the apparatus comprising: |
|---|---|
| Element A | a suspension assembly including a frame, a suspension, one or more drive axles, and one or more wheels coupled to respective ones of the one or more drive axles; |
| Element B | a first wheel of the one or more wheels including a first electric motor-generator and a second wheel of the one or more wheels including a second electric motor-generator, the first and second electric motor-generators coupled to provide, in a first mode of operation, a motive rotational force at respective ones of the first and second wheels to supplement the primary motive forces, and to provide, in a second mode of operation, a regenerative braking force; |
| Element C | an energy store from which energy is supplied to power the first and second electric motor-generators in the first mode of operation and to which energy is supplied in the second mode of operation; and |
| Element D | a controller operatively coupled between the first electric motor-generator, the second electric motor-generator, and one or more sensor inputs to independently transition each of the first and second electric motor-generators between the first, the second and at least a third mode of operation, during motion of the vehicle over a roadway, using the one or more sensor inputs; |

COMPLAINT                                                     18                                    CASE NO.  5:26-CV-2311

| Element E | wherein, based on a first sensor input, the controller transitions the first electric motor-generator between the first, the second, and the third mode of operation. |

83. Range Energy has not infringed and does not infringe claims 1, 11, or 18 of the '560 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

84. As the first of a set of a non-limiting examples with regard to claim 1 of the '560 patent, Range Energy's eTrailer Systems' electric power systems do not operate in first, second, and third modes of operation, where one provides motive rotational force, a second provides a regenerative braking force, and a third mode. First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations. Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

85. Nor do Range Energy's eTrailer Systems include controllers to transition between modes of operation. The phrase "the controller … to transition" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller … to transition" as used in the claim.

86. Nor does Range Energy provide suspension assemblies. It provides kits that do not include suspension equipment.

87. As the first of a set of a non-limiting examples with regard to claim 11 of the '560 patent, Range Energy does not replace existing suspension assemblies with hybridizing suspension assemblies for customers. In the event that a customer were to employ a Range Energy eTrailer System, that customer would install that system, not Range Energy. Nor does Range Energy direct or advise customers to replace existing suspension assemblies. Again, in the event that a customer were to employ a Range Energy eTrailer System, Range Energy would provide instructions on the installation of

COMPLAINT                                           19                              CASE NO.  5:26-CV-2311

its system, not on the removal of any "existing suspension assembly."

88. Range Energy's eTrailer Systems' electric power systems do not operate in first, second, and third modes of operation, where one provides assistive motive force, a second provides a regenerative braking force, and a third mode. First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations. Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

89. Nor do Range Energy's eTrailer Systems include controllers to transition between modes of operation. The phrase "the controller … to transition" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller … to transition" as used in the claim.

90. Nor does Range Energy provide suspension assemblies. It provides kits that do not include suspension equipment.

91. As the first of a set of a non-limiting examples with regard to claim 18 of the '560 patent, Range Energy's eTrailer Systems' electric power systems do not operate in first, second, and third modes of operation, where one provides motive rotational forces, a second provides a regenerative braking force, and a third mode. First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations. Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

92. Nor do Range Energy's eTrailer Systems include controllers to transition between modes of operation. The phrase "the controller … to independently transition" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller … to independently transition" as used in the claim.

COMPLAINT

20

CASE NO. 5:26-CV-2311

93.     Nor does Range Energy provide suspension assemblies.  It provides kits that do not include suspension equipment.

**COUNT 5: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 10,654,369**

94.     Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

95.     Hyliion has alleged and continues to allege that Range Energy infringes claims 1 and 9 of the '369 patent.  Claim 1 of the '369 patent recites:

| Preamble | An apparatus for use in a tractor-trailer vehicle, the apparatus comprising: |
|---|---|
| Element A | a first electric motor-generator; |
| Element B | a first wheel coupled with the first electric motor-generator to provide, in a first mode of operation, a motive rotational force at the first wheel to supplement the primary motive forces, and to provide, in a second mode of operation, a regenerative braking force; |
| Element C | an energy store from which energy is supplied to power the first electric motor-generator in the first mode of operation and to which energy is supplied by regenerative braking in the second mode of operation; and |
| Element D | a controller in communication with the first electric motor-generator, the controller to: |
| Element E | receive sensor inputs from a plurality of different types of sensors, compare the plurality of sensor inputs to predetermined, corresponding threshold values, and |
| Element F | control the first electric motor-generator to select one of the first mode of operation, the second mode of operation, or a third mode of operation. |

96.     Claim 9 of the '369 patent recites:

| Preamble | A method, comprising: |
|---|---|
| Element A | coupling a first wheel of a tractor-trailer vehicle and a first electric motor-generator to provide, in a first mode of operation, an assistive motive force at the first wheel and, in a second mode of operation, a regenerative braking force, the one or more wheels configurable with tires to allow the trailer to roll along a roadway when motivated by a fuel consuming engine of a tractor to which the trailer is mechanically coupled in a tractor-trailer vehicle configuration; and |
| Element B | coupling a controller between the first electric motor-generator, wherein |

| | the controller is to perform: |
|---|---|
| Element C | receiving sensor inputs from a plurality of different types of sensors, |
| Element D | comparing the plurality of sensor inputs to predetermined, corresponding threshold values, and |
| Element E | controlling the first electric motor-generator to select one of the first mode of operation, the second mode of operation, or a third mode of operation. |

97. Range Energy has not infringed and does not infringe claims 1 or 9 of the '369 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

98. As the first of a set of a non-limiting examples with regard to claim 1 of the '369 patent, Range Energy's eTrailer Systems' electric power systems do not operate in first, second, and third modes of operation, where one provides motive rotational force, a second provides a regenerative braking force, and a third mode. First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations. Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

99. Nor do Range Energy's eTrailer Systems include controllers that compare a plurality of sensor inputs to predetermined, corresponding threshold values. The phrase "the controller to" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller to" as used in the claim.

100. As the first of a set of a non-limiting examples with regard to claim 9 of the '369 patent, Range Energy's eTrailer Systems' electric power systems do not operate in first, second, and third modes of operation, where one provides assistive motive force, a second provides a regenerative braking force, and a third mode. First, Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations. Second, Range Energy's eTrailer System's electric power systems

COMPLAINT                                    22                          CASE NO.  5:26-CV-2311

receive rather than provide force.

101.    Nor do Range Energy's eTrailer Systems include controllers that compare a plurality of sensor inputs to predetermined, corresponding threshold values.  The phrase "the controller to perform" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller to perform" as used in the claim.

## COUNT 6: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 10,821,853

102.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

103.    Hyliion has alleged and continues to allege that Range Energy infringes claim 16 of the '853 patent.  Claim 16 of the '853 patent recites:

| Preamble | A trailer for use in combination with a powered vehicle, the trailer comprising: |
|---|---|
| Element A | one or more on-board sensors configured to detect trailer data including at least one of trailer position data, trailer weight data, trailer speed data, and trailer acceleration data for the trailer traveling along a given trajectory; |
| Element B | a control system operable to compute, based at least in part on the trailer data, a total estimated torque to maintain movement of the trailer along the given trajectory at a substantially constant speed; and |
| Element C | an electric motor-generator coupled to one or more trailer axles, wherein the electric motor-generator is configured to provide a specified torque to the one or more trailer axles; wherein the control system is further operable to computationally estimating a torque applied by the powered vehicle towing the trailer; and wherein based on the computationally estimated torque applied by the powered vehicle and on the computed total estimated torque, applying the specified trailer torque to the one or more trailer axles. |

104.    Range Energy has not infringed and does not infringe claim 16 of the '853 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

105.    As the first of a set of a non-limiting examples, Range Energy's eTrailer Systems'

COMPLAINT                                    23                          CASE NO.  5:26-CV-2311

electric power systems do not include sensors that detect trailer data.  Instead, those sensors detect physical conditions that get converted to data.

106.    Nor do Range Energy's eTrailer Systems include control systems operable to compute a total estimated torque to maintain movement of the trailer along the given trajectory at a substantially constant speed.  First, the phrase "control system operable to" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "control system operable to" as used in the claim.  Second, Range Energy eTrailer Systems do not estimate torque to maintain movement of a trailer along a trajectory at a substantially constant speed.  The computations that Range Energy eTrailer Systems engage in is directed at achieving "weightlessness" for the towing tractor.

107.    Nor does Range Energy provide electric motor-generators coupled to trailer axles.  Range Energy's eTrailer System's electric power system is an integral part of the trailer axle, not coupled to the trailer axle.

108.    Nor do Range Energy's eTrailer Systems include control systems operable to "computationally estimating a torque applied by the powered vehicle towing the trailer."  First, the phrase "control system operable to" again invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "control system operable to … computationally estimating a torque applied by the powered vehicle towing the trailer."  Second, Range Energy eTrailer Systems do not estimate torque applied by the powered vehicle towing the trailer.  The computations that Range Energy eTrailer Systems engage in is directed at achieving "weightlessness" for the towing tractor.

109.    Nor do Range Energy's eTrailer Systems apply an amount of torque based on the two previously-mentioned estimates.  Instead, Range Energy eTrailer Systems apply torque to achieve

COMPLAINT                                    24                                    CASE NO.  5:26-CV-2311

"weightlessness" for the towing tractor.

## COUNT 7: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 10,967,742

110.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

111.    Hyliion has alleged and continues to allege that Range Energy infringes claim 1 of the '742 patent.  Claim 1 of the '742 patent recites:

| Preamble | A trailer suitable for use in a tractor-trailer vehicle configuration, the trailer comprising: |
|---|---|
| Element A | one or more on-trailer motor-generators coupled to a respective one or more drive axles of the trailer to provide, in one mode of operation, an assistive motive rotational force at wheels of the trailer and to provide, in another mode of operation, a regenerative braking force at wheels of the trailer, the one or more on-trailer motor-generators responsive to a controller operatively coupled to one or more sensor inputs to independently transition each of the one or more on-trailer motor-generators between the one and the other mode of operation, during motion of the tractor-trailer vehicle over a roadway, using the one or more sensor inputs; and |
| Element B | an on-trailer battery from which stored energy is supplied to power the one or more on-trailer motor-generators in the one mode of operation and to which regenerated braking energy is supplied in the other mode of operation; |
| Element C | wherein, based on a first sensory condition, the controller transitions a first one of the one or more on-trailer motor-generators between the one and the other mode of operation; and |
| Element D | wherein, based on a second sensory condition, the controller transitions a second one of the one or more on-trailer motor-generators between the one and the other mode of operation. |

112.    Range Energy has not infringed and does not infringe claim 1 of the '742 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

113.    As the first of a set of a non-limiting examples, Range Energy does not provide vehicles. Instead, its eTrailer System are kits.

COMPLAINT                                    25                        CASE NO.  5:26-CV-2311

114.    Nor does Range Energy couple an electric motor-generator to one or more drive axles. Range Energy's eTrailer System's electric power system is an integral part of the drive axle, not coupled to the drive axle.

115.    Nor do Range Energy's eTrailer Systems' electric power systems operate in first and second modes of operation, one providing assistive motive rotational force, the other providing a regenerative braking force.  First, Range Energy's eTrailer System's electric power systems remain in the same mode during all operations.  Second, Range Energy's eTrailer System's electric power systems receive rather than provide force.

116.    Nor do Range Energy's eTrailer Systems include controllers to independently transition between modes of operation.  The phrase "the controller … to independently transition" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller … to independently transition" as used in the claim.

**COUNT 8: DECLARATION OF NON-INFRINGEMENT OF U.S. PAT. NO. 12,024,029**

117.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

118.    Hyliion has alleged and continues to allege that Range Energy infringes claim 1 of the '029 patent.  Claim 1 of the '029 patent recites:

| Preamble | A towed vehicle for use in combination with a towing vehicle, the towed vehicle comprising: |
|---|---|
| Element A | a suspension assembly including a frame, a suspension, one or more drive axles, and one or more wheels coupled to respective ones of the one or more drive axles; |
| Element B | at least one electric motor-generator coupled to at least one of the drive axles, wherein, in a first mode of operation, the at least one electric motor-generator provides a positive motive rotational force to the at least one of the drive axles to supplement the motive forces applied by the towing vehicle, and in a second mode of operation, the at least one electric motor- |

COMPLAINT

26

CASE NO.  5:26-CV-2311

|  | generator receives a negative rotational force from the at least one of the drive axles from which the at least one electric motor-generator generates energy by regenerative braking; |
| --- | --- |
| Element C | an energy store from which energy is supplied to power the at least one electric motor-generator in the first mode of operation and to which energy is supplied by regenerative braking in the second mode of operation; |
| Element D | one or more sensors that sense data for at least one condition of the towed vehicle or the towing vehicle; and |
| Element E | a controller that operates autonomously from the towed vehicle and is in communication with the at least one electric motor-generator, the controller receives sensor input from the one or more sensors and transitions the at least one electric motor-generator between the first mode of operation, the second mode of operation, and a third mode of operation, during motion of the towed vehicle in combination with the towing vehicle over a roadway, based on the data from the one or more sensors. |

119. Range Energy has not infringed and does not infringe claim 1 of the '029 patent directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Range Energy's eTrailer System.

120. As the first of a set of a non-limiting examples, Range Energy does not provide vehicles. Instead, its eTrailer System are kits.

121. Nor does Range Energy couple an electric motor-generator to one or more drive axles. Range Energy's eTrailer System's electric power system is an integral part of the drive axle, not coupled to the drive axle.

122. Nor does Range Energy provide towed vehicles.  Range Energy does not provide vehicles, just eTrailer Systems kits, let alone vehicles attached to a vehicle that tows those vehicles.

123. Nor do Range Energy's eTrailer Systems' electric power systems operate in first, second, and third modes of operation, where one provides positive motive rotational force, a second receives a negative rotational force, and a third mode.  Range Energy's eTrailer Systems' electric power systems remain in the same mode during all operations.

124. Nor do Range Energy's eTrailer Systems include sensors that sense data.  Range

COMPLAINT                                    27                          CASE NO.  5:26-CV-2311

Energy's eTrailer Systems sense physical conditions that are converted into data.

125.    Nor does Range Energy provide suspension assemblies.  It provides kits that do not include suspension equipment.

126.    Nor do Range Energy's eTrailer Systems include a "motor-generator provides a positive motive rotational force to the at least one of the drive axles to supplement the motive forces applied by the towing vehicle."  Because the motor-generator's positive rotational force to the drive axle must "supplement" the force the towing vehicle applies, their respective forces must be directed to the same location.  The only one mentioned in the claim is the trailer drive axle.  But to the extent the towing vehicle would provide motive force to the trailer, it would do so at the trailer hitch, not at the trailer drive axle.

127.    Nor are Range Energy's eTrailer Systems engaged in "estimating a torque applied by the powered-vehicle towing the trailer." None of its sensors measure torque at the trailer hitch, the only place where the towing vehicle contacts the trailer.

128.    Nor do Range Energy's eTrailer Systems include a controller that operates autonomously from the towed vehicle.  Range Energy's eTrailer Systems dictate the control of those eTrailer systems and hence are not autonomous of those trailer systems.

129.    Nor do Range Energy's eTrailer Systems include a "controller receives sensor input … and transitions" between modes of operation.  The phrase "controller receives sensor input … and transitions" invokes means-plus-function treatment under 35 U.S.C. § 112(f), and nothing in Range Energy's eTrailer Systems is equivalent to anything in the specification that could be considered a "controller receives sensor input … and transitions" as used in the claim.

**COUNT 9: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 9,694,712**

130.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

COMPLAINT                                    28                        CASE NO.  5:26-CV-2311

131.    The asserted claim of the '712 patent is invalid under 35 U.S.C. §§ 101, 102 and 103 for at least the reasons set forth below.

132.    As the language quoted above demonstrates, claim 8 of the '712 patent is directed to an abstract idea, recovering and using energy in the context of a trailer, and uses results-oriented language with no explanation of how the claimed result is achieved. That claim also lacks any inventive concept to preserve its validity under § 101.

133.    Various prior art references anticipate the '712 patent's claim 8, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938.  To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

**COUNT 10: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 9,802,508**

134.    Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

135.    The asserted claims of the '508 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

136.    As the language quoted above demonstrates, claims 1 and 10 of the '508 patent are directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and use results-oriented language with no explanation of how the claimed result is achieved. Those claims also lack any inventive concept to preserve its validity under § 101.

137.    Various prior art references anticipate the '508 patent's claims 1 and 10, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938.  To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include

COMPLAINT                                    29                                    CASE NO.  5:26-CV-2311

that element.

138. Both claims 1 and 10 of the '508 patent refer to a "controller" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment. However, the patent specification does not disclose a sufficient structure for a controller that accomplishes the functions claimed for these "controllers" as §112 requires.

### COUNT 11: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 10,245,972

139. Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

140. The asserted claims of the '972 patent are invalid under 35 U.S.C. §§ 101, 102 and 103 for at least the reasons set forth below.

141. As the language quoted above demonstrates, claims 1, 4, 7, and 10 of the '972 patent are directed to an abstract idea, recovering, storing, using, and sharing energy in the context of a trailer, and use results-oriented language with no explanation of how the claimed result is achieved. Those claims also lack any inventive concept to preserve its validity under § 101.

142. Various prior art references anticipate the '972 patent's claims 1, 4, 7, and 10, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938. To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

### COUNT 12: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 10,384,560

143. Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

144. The asserted claims of the '560 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

COMPLAINT

30

CASE NO.  5:26-CV-2311

145.   As the language quoted above demonstrates, claims 1, 11, and 18 of the '560 patent are directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and use results-oriented language with no explanation of how the claimed result is achieved. Those claims also lack any inventive concept to preserve its validity under § 101.

146.   Various prior art references anticipate the '560 patent's claims 1, 11, and 18, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938.  To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

147.   Claims 1, 11, and 18 are also indefinite under § 112.  First, all three claims refer to an "electric motor-generator coupled" without explaining what it is coupled to, which is indefinite. Second, all three claims refer to a "controller" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment.  However, the patent specification does not disclose a sufficient structure for a controller that accomplishes the functions claimed for these "controllers" as §112 requires.

### COUNT 13: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 10,654,369

148.   Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

149.   The asserted claims of the '369 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

150.   As the language quoted above demonstrates, claims 1 and 9 of the '369 patent are directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and use results-oriented language with no explanation of how the claimed result is achieved. Those claims also lack any inventive concept to preserve its validity under § 101.

151.   Various prior art references anticipate the '369 patent's claims 1 and 9, including

DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938. To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

152. Claims 1 and 9 are also indefinite under § 112. First, both claims refer to a "primary motive forces," which is indefinite, because nothing in the intrinsic record specifies what those motive forces are and what makes them "primary." Second, both claims refer to a "controller" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment. However, the patent specification does not disclose a sufficient structure for a controller that accomplishes the functions claimed for these "controllers" as §112 requires.

## COUNT 14: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 10,821,853

153. Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

154. The asserted claim of the '853 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

155. As the language quoted above demonstrates, claim 16 of the '853 patent is directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and uses results-oriented language with no explanation of how the claimed result is achieved. That claim also lacks any inventive concept to preserve its validity under § 101.

156. Various prior art references anticipate the '853 patent's claim 16, including DE102010062979 and WO/2010/146497. To the extent that an element is missing from either of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references anticipating other claims, including DE102012107648; NL1030159; and JP2008-012938, that include that element.

COMPLAINT                                    32                          CASE NO.  5:26-CV-2311

157. Claim 16 is also indefinite under § 112. First, the claim includes a method claim element "computationally estimating," in an apparatus claim, which is indefinite. Second, the claim refers to a "substantially constant speed," while the specification provides not guidance for determining the scope of what this term of degree encompasses, which also is indefinite. Third, the claim refers to a "control system" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment. However, the patent specification does not disclose a sufficient structure for a control system that accomplishes the functions claimed for the "control system" as §112 requires.

**COUNT 15: DECLARATION OF INVALIDITY OF U.S. PAT. NO. 10,967,742**

158. Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

159. The asserted claim of the '742 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

160. As the language quoted above demonstrates, claim 1 of the '742 patent is directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and uses results-oriented language with no explanation of how the claimed result is achieved. That claim also lacks any inventive concept to preserve its validity under § 101.

161. Various prior art references anticipate the '742 patent's claim 1, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938. To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

162. Claim 1 is also indefinite under § 112. The claim refers to a "controller" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment. However, the patent specification does not disclose a sufficient structure for a controller that accomplishes the functions claimed for the

COMPLAINT 33 CASE NO. 5:26-CV-2311

"controller" as §112 requires.

### COUNT 16: DECLARATION OF INVALIDITY T OF U.S. PAT. NO. 12,024,029

163. Range Energy incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

164. The asserted claim of the '029 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for at least the reasons set forth below.

165. As the language quoted above demonstrates, claim 1 of the '029 patent is directed to an abstract idea, recovering, storing, and using energy in the context of a trailer, and uses results-oriented language with no explanation of how the claimed result is achieved. That claim also lacks any inventive concept to preserve its validity under § 101.

166. Various prior art references anticipate the '029 patent's claim 1, including DE102012107648; DE102010062979; NL1030159; WO/2010/146497; and JP2008-012938. To the extent that an element is missing from any one of those references, one of ordinary skill in the art would have been motivated to combine that reference with any of the other references in this list that include that element.

167. Claim 1 is also indefinite under § 112. First, the claim includes method claim elements, "motor-generator provides," "controller receives," and "controller … transitions" in an apparatus claim, which is indefinite. Second, the claim refers to a "control system" which, as already noted above, is subject to 35 U.S.C. §112(f) treatment. However, the patent specification does not disclose a sufficient structure for a control system that accomplishes the functions claimed for the "control system" as §112 requires.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Range Energy requests that this Court enter judgment in its favor and against Hyliion as follows:

A.    That the Court enter a judgment barring Hyliion from asserting the Patents-in-Suit against Range Energy;

B.    That the Court enters a judgment declaring that Range Energy has not infringed and does not infringe any valid and enforceable claim of the Patents-in-Suit.

C.    That the Court enter a judgment declaring that all asserted claims of the Patents-in-Suit are invalid;

D.    That the Court declare that this case is exceptional under 35 U.S.C. § 285 and award Range Energy its attorneys' fees, costs, and expenses incurred in this action;

E.    That the Court award Range Energy any and all other relief to which Range Energy may show itself to be entitled; and

F.    That the Court award Range Energy any other relief as the Court may deem just, equitable, and proper.

Dated: March 17, 2026                                Respectfully submitted,

                                                     /s/ David Berten

                                                     David Berten (IL Bar #6200898)
                                                     (Member of the N.D. Ca. Bar)
                                                     dberten@giplg.com
                                                     C. Graham Gerst (IL Bar #6255988)
                                                     (*Pro Hac Vice* application forthcoming)
                                                     ggerst@giplg.com
                                                     Global IP Law Group, LLC
                                                     55 West Monroe Street Suite 3400
                                                     Chicago, IL 60603
                                                     T: (312) 241-1500

                                                     *Attorneys for Plaintiff Range Energy, Inc.*

COMPLAINT                              35                         CASE NO.  5:26-CV-2311