United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANGE ENERGY INC., Plaintiff, v. HYLIION INC., Defendant. | Case No. 26-cv-02311-TSH<br>**ORDER RE: PLAINTIFF'S MOTION TO DISMISS**<br>Re: Dkt. No. 38 |

## I. INTRODUCTION

Plaintiff Range Energy Inc. ("Range") filed a complaint for declaratory judgment of patent non-infringement and invalidity against Defendant Hyliion Inc. ("Hyliion") concerning eight patents owned by Hyliion (the "patents-in-suit") related to electric trailers. ECF No. 1. Hyliion filed counterclaims for patent infringement against Range, alleging that Range infringes two of the patents-in-suit. ECF No. 14. Pending before the Court is Range's Motion to Dismiss Hyliion's Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 38 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the September 10, 2026, hearing. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

### A. Factual Background

The facts of this case are well known to the parties, and the Court has previously summarized this case's background in its order regarding the parties' previous motions to dismiss. ECF No. 36 ("MTD Order"); *see Range Energy Inc. v. Hyliion Inc.*, No. 26-cv-02311-TSH, 2026 WL 1849945 (N.D. Cal. June 26, 2026). The Court incorporates by reference the factual

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 29, 29-1, 29-2.

background set forth therein. The Court includes only the factual background that is relevant to ruling on the present Motion to Dismiss.

Hyliion alleges that Range's eTrailer System infringes two of its patents: U.S. Patent Nos. 10,821,853 (the "'853 Patent") and 12,024,029 (the "'029 Patent"). Am. Answer at 26–28 (ECF No. 37).

**1. The '853 Patent**

The '853 Patent, entitled "Vehicle Energy Management System And Related Methods," issued on November 3, 2020. Am. Answer at 20; *see* Am. Answer, Ex. 1 at 1 ('853 Patent) (ECF No. 37-1). The '853 Patent issued from U.S. Patent Application No. 15/721,345 which was filed on September 29, 2017. '853 Patent at 1. The '853 Patent claims a priority date of September 30, 2016. *Id.* at col. 1 ll. 7–10. A Certificate of Correction for the '853 Patent issued on April 14, 2026. Am. Answer at 20; *see* Am. Answer, Ex. 1 at 41.

The '853 Patent discloses a "through the road (TTR) hybridization strategy" that facilitates "introduction of hybrid electric vehicle technology in a significant portion of current and expected trucking fleets." '853 Patent Abstract. The invention relates to "systems and methods to intelligently control regeneration and reuse of captured energy in a TTR hybrid configuration." *Id.* at Background.

Claim 16, an independent claim, recites:

> A trailer for use in combination with a powered vehicle, the trailer comprising:
>
> one or more on-board sensors configured to detect trailer data including at least one of trailer position data, trailer weight data, trailer speed data, and trailer acceleration data for the trailer traveling along a given trajectory;
>
> a control system operable to compute, based at least in part on the trailer data, a total estimated torque to maintain movement of the trailer along the given trajectory at a substantially constant speed; and
>
> an electric motor-generator coupled to one or more trailer axles, wherein the electric motor-generator is configured to provide a specified torque to the one or more trailer axles; wherein the control system is further operable to computationally estimating a torque applied by the powered vehicle towing the trailer; and wherein based on the computationally estimated torque applied by the powered vehicle and on the computed total estimated torque, applying the

> specified trailer torque to the one or more trailer axles.

*Id.* at col. 32 ll. 17–38.[2] In other words, a trailer contains (1) a sensor that detects trailer data; (2) a control system that uses the trailer data to compute the amount of force needed to keep the trailer moving at a constant speed and to estimate the force applied by the powered vehicle towing the trailer; and (3) an electric motor-generator coupled to at least one trailer axle that can supply a specific force to the trailer axle based on the estimated force applied by the powered vehicle and the computed amount of force needed to keep the trailer moving at a constant speed.

Claim 17, a dependent claim, recites:

> The trailer of claim 16, further comprising:
>
> a hybrid suspension system including the electric motor-generator coupled to the one or more trailer axles, wherein the hybrid suspension system is installed underneath the trailer; wherein the hybrid suspension system is configured to operate in one of a power assist mode, a regeneration mode, and a passive mode of operation to provide the specified trailer torque.

*Id.* at col. 32 ll. 39–46.

The Specification of the '853 Patent teaches the following information. Techniques for reducing large fuel costs in the U.S. trucking industry are desirable as fuel accounts for over 30% of overall industry operating costs. *Id.* at col. 1 ll. 24–31. Existing hybrid technology focuses on "hybridizing the drivetrain of a heavy truck or tractor unit, while any attached trailer or dead axles remain a passive load." *Id.* at col. 1 ll. 32–37. This technology is limited—improved hybrid drivetrains for introduction in new towing vehicles only addresses a small fraction of existing fleets given the number of towing units already in service and their longevity. *Id.* at col. 1 ll. 32–47.

TTR hybridization can improve fuel efficiency and performance by "supplementing motive forces delivered through a primary drivetrain and fuel-fed engine with supplemental torque delivered at one or more electrically-powered drive axles." *Id.* at col. 1 ll. 51–67. In short, instead

---

[2] Torque is a measure of rotational force. *See Torque*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/torque ("a force that produces or tends to produce rotation or torsion (an automobile engine delivers *torque* to the drive shaft)") (emphasis in original).

of acting as a passive load, the vehicle being towed contributes force through its electric motor which supplements the force provided by the towing vehicle's combustion engine. The invention uses control strategies to deliver supplemental force through an electrically-powered axle "in a manner that follows operational parameters or computationally estimates states of the primary drivetrain and/or fuel-fed engine, but does not itself participate in control of the fuel-fed engine or primary drivetrain." *Id.* at col. 2 ll. 1–12. The invention senses "operating parameters that can be observed and/or kinematic variables" to determine states of the towing vehicle and inform its controller. *Id.* So instead of directly relying on the towing vehicle for information, the invention can infer states of the towing vehicle using sensed data.

A "trailer" is "an unpowered vehicle towed by a powered vehicle"; the powered vehicle is also known as a "tractor." *Id.* at col. 9 ll. 33–45. "A trailer, as typically an unpowered vehicle, includes one or more passive axles" that may be replaced by "powered axles" which are part of a hybrid suspension system. *Id.* at col. 9 ln. 24–col. 10 ln. 37. "'On-board sensors' may be used to describe sensors that are coupled to or part of the hybrid suspension system, sensors that are coupled to or part of a trailer to which the hybrid suspension system is attached, as well as remote sensors[.]" *Id.* at col. 18 ll. 41–51. "A variety of control systems designs are contemplated[.]" *Id.* at col. 17 ln. 12–col. 18 ln. 30. The control system is associated with a "control system circuit." *Id.* at col. 6 ll. 1–11, col. 14 ll. 5–11. In general, the control system "seeks to follow and supplement the motive inputs of the fuel-fed engine and primary drivetrain" by estimating these inputs. *Id.* at col. 7 ll. 20–30.

The Specification discloses several embodiments of the claimed invention. Some embodiments include "a hybrid suspension system." *Id.* at col. 5 ll. 19–39. The "hybrid suspension system is configured to operate largely independently of the fuel-fed engine and primary drivetrain of a powered vehicle." *Id.* at col. 10 ll. 12–16. In some cases, it operates "autonomously from the engine and drivetrain controls of the powered vehicle." *Id.* This means that the hybrid suspension system can

> operate without commands or signals from the powered towing vehicle, to independently gain information about itself and the environment, and to make decisions and/or perform various functions

> based on one or more algorithms stored in the controller, as described in more detail below.

*Id.* at col. 10 ll. 16–26. Autonomous operation "does not preclude observation or estimation of certain parameters or states of a powered vehicle's fuel-fed engine or primary drivetrain[.]" *Id.* Some embodiments provide a hybridized suspension assembly affixed underneath a vehicle as a replacement to a passive suspension assembly. *Id.* at col. 6 ln. 64–col. 7 ln. 4.

The Certificate of Correction for the '853 Patent corrects the Patent as follows:

> In the Claims
>
> Claim 16, Column 32, Lines 32–34: 'the control system is further operable to computationally estimating a torque applied by the powered vehicle towing the trailer' should be changed to 'the control system is further operable to computationally estimate a torque applied by the powered vehicle towing the trailer'

Am. Answer, Ex. 1 at 41.

**2. Hyliion's Allegations**

Hyliion alleges the following in its Amended Answer. Range's eTrailer System infringes "one or more claims of the '853 Patent, including at least claim 16, directly and/or indirectly." Am. Answer at 26.

Conventional trailer suspensions "depended on a direct communication link to receive driver input from the tractor in order to coordinate the trailer's contribution of motive force or braking force." *Id.* at 21. The inventors solved this problem "through specific, non-conventional arrangements of trailer-based hardware and control logic that enable a towed vehicle to contribute and recapture motive force autonomously without a communication link to, or control over, the tractor and to be retrofit onto trailers already in service." *Id.* Conventional trailers

> employed passive axles that contributed no motive force, and prior approaches to adding motive force to a towed vehicle depended on information supplied from the tractor. No conventional trailer system used on-board trailer sensor data to computationally estimate the towing vehicle's torque contribution and to apply, through an axle-coupled electric motor-generator, a coordinated supplemental trailer torque on that basis.

*Id.* at 23.

"The ordered combination recited in Claim 16 supplies an inventive concept that is significantly more than any abstract idea." *Id.* at 22. "[T]he claim does not permit the control

system merely to receive or read the towing vehicle's torque, but instead requires the system to estimate that quantity computationally from the trailer's on-board sensors detecting trailer data." *Id.* The control system

> then coordinates the trailer's own supplemental torque based on that estimate together with the independently computed torque needed to maintain a substantially constant speed, and the electric motor-generator applies the specified torque to the trailer axles. This specific arrangement enables the trailer to contribute a coordinated motive force through an axle-coupled motor-generator and permits the system to be retrofit onto trailers already in service by replacing a conventional passive suspension assembly with an active electromechanical one.

*Id.* at 22–23. No element operates in isolation:

> the onboard sensors supply trailer data; the control system both computes the total estimated torque required to maintain the trailer's movement at a substantially constant speed and computationally estimates the towing vehicle's torque contribution; and the axle-coupled electric motor-generator then applies a specified supplemental torque to the trailer axles based on both computed quantities. It is this two-input arrangement—determining a physical output from an inferred, off-board quantity and an independently computed system-level quantity—that constitutes a technological improvement in how the trailer operates as a machine and that achieves a result none of the recited components achieves alone.

*Id.* at 24.

**B. Procedural Background**

On March 17, 2026, Range filed this declaratory judgment action against Hyliion seeking a judgment of non-infringement and invalidity for each of the asserted claims in the patents-in-suit. ECF No. 1 ("Compl."). Range alleges sixteen causes of action: (1) Non-Infringement of the '712 Patent; (2) Non-Infringement of the '508 Patent; (3) Non-Infringement of the '972 Patent; (4) Non-Infringement of the '560 Patent; (5) Non-Infringement of the '369 Patent; (6) Non-Infringement of the '853 Patent; (7) Non-Infringement of the '742 Patent; (8) Non-Infringement of the '029 Patent; (9) Invalidity of the '712 Patent; (10) Invalidity of the '508 Patent; (11) Invalidity of the '972 Patent; (12) Invalidity of the '560 Patent; (13) Invalidity of the '369 Patent; (14) Invalidity of the '853 Patent; (15) Invalidity of the '742 Patent; and (16) Invalidity of the '029 Patent. Compl. ¶¶ 40–167.

On April 21, 2026, Hyliion filed an Answer. ECF No. 14 ("Answer"). Hyliion alleged

two counterclaims against Range: (1) Infringement of the ’853 Patent; and (2) Infringement of the ’029 Patent. Answer at 21–22.

On April 21, 2026, Hyliion filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), seeking dismissal of Claims 1–5, 7, 9–13, and 15 in Range’s Complaint on the ground that Range did not demonstrate the existence of an actual case or controversy. ECF No. 16. On May 12, 2026, Range filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of both Hyliion’s patent infringement counterclaims on the ground that the asserted patent claims were invalid. ECF No. 28. On June 26, 2026, the Court denied Hyliion’s motion to dismiss and granted in part and denied in part Range’s motion to dismiss. ECF No. 36. The Court concluded that Claim 16 of the ’853 Patent is patent-ineligible because it recites an abstract idea and granted Hyliion leave to amend its Answer. *Id.*

On July 10, 2026, Hyliion filed an Amended Answer. ECF No. 37 (“Am. Answer”). Hyliion alleges two counterclaims against Range: (1) Infringement of the ’853 Patent; and (2) Infringement of the ’029 Patent. Am. Answer at 26–28.

On July 31, 2026, Range filed the instant Motion to Dismiss Hyliion’s Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 38 (“Mot.”). On August 14, 2026, Hyliion filed an Opposition. ECF No. 41 (“Opp.”). On August 21, 2026, Range filed a Reply. ECF No. 42 (“Reply”).

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) “tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a “short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead “enough facts to state a claim to relief that is plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires “more than a sheer possibility that a defendant has acted unlawfully.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a

defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

To overcome the presumption of validity, an accused infringer must prove patent invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). As such, while "patent eligibility can be determined at the Rule 12(b)(6) stage," such a motion can only invalidate a patent under 35 U.S.C. § 101 when "the complaint, the patent, and materials

subject to judicial notice" show that the claims are patent-ineligible as a matter of law. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125, 1128 (Fed. Cir. 2018); *see also Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023) ("Patent eligibility is ultimately a question of law that may be based on underlying factual findings.").

## IV. DISCUSSION

Range moves to dismiss one of Hyliion's patent infringement counterclaims for failing to state a cognizable claim. Mot. at 1. Range argues that Claim 16 of the '853 Patent ("Claim 16") is invalid under Section 101 of the Patent Act because it recites patent-ineligible subject matter in the form of an abstract idea. *Id.*

The Court previously found that at step one of the *Mayo/Alice* test, Claim 16 is directed to the abstract idea itself of using sensor data and mathematical algorithms to control an electric motor-generator. MTD Order at 29. Hyliion does not seek to relitigate step one on this Motion. Opp. at 5:25–27. The question is thus whether Claim 16 is patent-eligible at step two. Range argues that "Claim 16 still lacks an inventive concept despite Hyliion's new allegations." Mot. at 3:12–7:11. Hyliion contends that taken as true, its new allegations establish that the recited combination in Claim 16 is not conventional. Opp. at 4:2–21.

Step two of the *Mayo/Alice* test asks whether the patent claim contains an inventive concept that adds significantly more to the patent-ineligible concept. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). At step two, courts must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (cleaned up). A claim that recites only "well-understood, routine, conventional" elements lacks an inventive concept. *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73 (2012). At this step, courts also consider whether a claim recites an application of the patent-ineligible concept that renders the claim patent-eligible. *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1373 (Fed. Cir. 2017).

As with step one, the specification is critical to the inquiry in step two. *See CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021) ("Here, as the

specification itself makes clear, the claims recite an inventive concept[.]"). However, "[t]o save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). "And the abstract ideas alone are not an inventive concept." *NantWorks, LLC v. Niantic, Inc.*, No. 20-cv-06262-LB, 2024 WL 3363568, at *7 (N.D. Cal. July 9, 2024), *aff'd*, No. 2024-2216, 2026 WL 1098161 (Fed. Cir. Apr. 23, 2026) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

"The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Therefore, on a Rule 12(b)(6) motion, plausible allegations that, if accepted as true, establish that a claim contains inventive components preclude dismissal. *Aatrix*, 882 F.3d at 1125.

Here, the Court concludes that Hyliion fails to adequately allege that Claim 16 contains an inventive concept. Hyliion argues that its allegations regarding the limitations of the prior art, taken as true, establish that Claim 16's recited combination is not conventional. Opp. at 4:2–27. However, plausible factual allegations may only preclude dismissing a case under Section 101 where "nothing on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)." *Aatrix*, 882 F.3d at 1125 (cleaned up). Importantly, allegations that are "wholly divorced from the claims or the specification" do not stave off dismissal. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). Contrary to Hyliion's assertion, its allegations are not "tethered to the claim language throughout." Opp. at 4:22–27.

First, Hyliion alleges that the patents-in-suit recite "specific, non-conventional arrangements of trailer-based hardware and control logic that enable a towed vehicle to contribute and recapture motive force autonomously without a communication link to, or control over, the tractor and to be retrofit onto trailers already in service." Am. Answer at 21. Hyliion does not parse these allegations regarding improvements over the prior art—it notes the Court found that the suspension system and autonomous controller limitations of Claim 1 of the '029 Patent plausibly supply an inventive concept for that claim. Opp. at 12:25–13:6 (citing MTD Order at 36); *see* Reply at 1:15–19 (arguing allegations "mix technology of both Hyliion's asserted patents

together without specifying what aspects concern [Claim 16]"). But Hyliion acknowledges that Claim 16 does not recite a hybrid suspension system; that limitation is instead found in dependent Claim 17. Opp. at 12:25–13:6; *see* '853 Patent at col. 32 ll. 39–46. And unlike Claim 1 of the '029 Patent, Claim 16 does not recite "a controller that operates autonomously from the towed vehicle." *Compare* '029 Patent at col. 24 ll. 31–64 *with* '853 Patent at col. 32 ll. 17–38; *see* Reply at 2:4–11 ("[Claim 16], on the other hand, does not require an autonomous trailer."). As such, because Claim 16 does not contain the limitations that permit autonomous torque control and retrofit of existing trailers, those cannot be inventive features of Claim 16. *See* '853 Patent at col. 6 ln. 64–col. 7 ln. 4, col. 10 ll. 12–16 (explaining hybrid suspension system may operate "autonomously from the engine and drivetrain controls of the powered vehicle" and may serve as a replacement to a passive suspension assembly). For that reason, Hyliion's allegation that Claim 16's "specific arrangement . . . permits the system to be retrofit onto trailers already in service" likewise fails to demonstrate an inventive concept. Am. Answer at 22–23.

Second, Hyliion alleges that unlike the prior art, which "depended on a direct communication link to receive driver input from the tractor in order to coordinate the trailer's contribution of motive force or braking force," Claim 16 "does not permit the control system merely to receive or read the towing vehicle's torque, but instead requires the system to estimate that quantity computationally from the trailer's on-board sensors detecting trailer data." Am. Answer at 21, 23. Claim 16 recites a controller that can compute "based at least in part on the trailer data, a total estimated torque." '853 Patent at col. 32 ll. 17–38. Hyliion does not allege what else the control system uses (beyond the trailer data) for this computation. Thus, the plain language of the claim does not exclude "simultaneous use [of] data received via a direct communication link from the tractor." Reply at 2:4–11. Hyliion asserts that "Claim 16 leaves untouched systems that obtain the tractor's torque directly over a data link rather than estimating it, systems responsive to driver or throttle inputs, and tractor-side hybridization." Opp. at 11:18–24. That may be. Yet Claim 16 recites a control system that computes a specific force to be contributed by the trailer based on the "computationally estimated torque applied by the powered vehicle" *and* on the computed "total estimated torque to maintain movement of the trailer along

the given trajectory at a substantially constant speed." '853 Patent at col. 32 ll. 17–38. In other words, both mathematical values are required to coordinate the trailer's contribution of torque, including the value that permits reliance on data directly received from the tractor. Thus, Claim 16 itself refutes Hyliion's allegations that the trailer's torque control does not depend on a direct communication link to the tractor. Therefore, because what makes Claim 16 inventive—as alleged by Hyliion—is not recited in the claim, Hyliion fails to plausibly allege that Claim 16's ordered combination is nonconventional. *Cellspin*, 927 F.3d at 1317.

The Court is not persuaded by Hyliion's argument that the Court must first construe terms in Claim 16 before determining whether Claim 16 is patent-eligible. According to Hyliion, "the scope of 'computationally estimate a torque applied by the powered vehicle' is disputed and unconstrued," and "materially affects whether the claimed arrangement is conventional." Opp. at 12:3–10. To be sure, "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). As such, on a motion to dismiss, "the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *Id.* However, Hyliion does not offer a proposed construction for the term identified. Reply at 8:1–9. Hyliion's passing reference to claim construction cannot preclude dismissal. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023) ("A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes.").

Hyliion argues that if the Court finds that Claim 16 is patent-ineligible, the ruling should be limited to Claim 16 because Hyliion alleges that Range infringes one or more claims of the '853 Patent. Opp. at 12:11–13:10. Hyliion requests leave to amend Counterclaim 1 to show that Claim 16 is patent-eligible; alternatively, Hyliion requests leave to amend to add Claim 17. *Id.* at 13:11–28. Range responds that Hyliion should not receive a third attempt to save Claim 16 because Hyliion "fails to propose a specific amendment or give any indication of how a new

amendment might preserve validity." Reply at 8:13–24. Range does not object to Hyliion amending Counterclaim 1 to add a new claim from the '853 Patent. *Id.* at 8:25–9:5. The Court agrees with Range that because Hyliion was given an opportunity to amend its allegations regarding Claim 16 but does not sufficiently allege that the claim is patent-eligible, and does not explain how further amendment would preserve Claim 16's validity, further leave to amend is not warranted. *See Rich*, 823 F.3d at 1209 ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos*, 292 F.3d at 1003 ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up); *contra Aatrix*, 882 F.3d at 1126 ("The proposed second amended complaint contains allegations that, taken as true, would directly affect the district court's patent eligibility analysis."). And because Range does not object to Hyliion amending its counterclaims to add other patent claims from the '853 Patent, the Court will permit Hyliion to do so.

Accordingly, the Court **GRANTS** Range's motion to dismiss Hyliion's Counterclaim 1 (alleging infringement of the '853 Patent). The Court **DENIES** Hyliion leave to amend Counterclaim 1 with respect to Claim 16 of the '853 Patent. The Court **GRANTS** Hyliion leave to amend Counterclaim 1 with respect to other claims of the '853 Patent.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Range's Motion to Dismiss Hyliion's Amended Counterclaim. Hyliion shall file any amended counterclaims within fourteen days.

**IT IS SO ORDERED.**

Dated: September 1, 2026

THOMAS S. HIXSON
United States Magistrate Judge